**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO._____**

HYDRAFACIAL LLC,

      Plaintiff,

      v.

BQ AESTHETIX & CO, LLC d/b/a
BELLATRIX USA

      Defendant.

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff HydraFacial LLC ("Plaintiff" or "HydraFacial"), by and through its undersigned

counsel, hereby files this Complaint against Defendant BQ Aesthetix & Co., LLC d/b/a Bellatrix

USA ("Bellatrix" or "Defendant") for infringement of the United States patents identified herein,

and alleges as follows:

## NATURE OF ACTION

1.     This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 100

*et seq*. in which HydraFacial asserts that Defendant infringes U.S. Patent Nos. 9,550,052 ("'052

Patent"); 11,865,287 ("'287 Patent"); 11,446,477 ("'477 Patent"); 12,053,607 ("'607 Patent");

8,048,089 ("'089 Patent"); 10,357,641 ("'641 Patent"); and 10,357,642 ("'642 Patent")

(collectively "Asserted Patents").  HydraFacial files this action to stop Defendant's infringement

of the Asserted Patents and to obtain all appropriate relief.

## THE PARTIES

2.      Plaintiff HydraFacial LLC is a California limited liability company with its principal place of business at 3600 E. Burnett St., Long Beach, CA 90809.  HydraFacial was formerly known as Edge Systems LLC.

3.      On information and belief, Defendant BQ Aesthetix & Co. LLC d/b/a Bellatrix is a Florida limited liability company with its principal place of business at 7913 Kismet St., Miramar, FL 33023.

## THE ASSERTED PATENTS

4.      On January 24, 2017, the USPTO duly and lawfully issued the '052 Patent, titled "CONSOLE SYSTEM FOR THE TREATMENT OF SKIN."  A true and correct copy of the '052 Patent is attached hereto as **Exhibit 1**.

5.      On January 9, 2024, the USPTO duly and lawfully issued the '287 Patent, titled "DEVICES AND METHODS FOR TREATING SKIN."  A true and correct copy of the '287 Patent is attached hereto as **Exhibit 2**.

6.      On September 20, 2022, the USPTO duly and lawfully issued the '477 Patent, titled "DEVICES AND METHODS FOR TREATING SKIN."  A true and correct copy of the '477 Patent is attached hereto as **Exhibit 3**.

7.      On August 6, 2024, the USPTO duly and lawfully issued the '607 Patent, titled "DEVICES AND METHODS FOR TREATING SKIN."  A true and correct copy of the '607 Patent is attached hereto as **Exhibit 4.**

8.      On November 1, 2011, the USPTO duly and lawfully issued the '089 Patent, titled "APPARATUS AND METHODS FOR TREATING THE SKIN."  A true and correct copy of the '089 Patent is attached hereto as **Exhibit 5**.

9.      On July 23, 2019, the USPTO duly and lawfully issued the '641 Patent, titled "TIPS FOR SKIN TREATMENT DEVICE."  A true and correct copy of the '641 Patent is attached hereto as **Exhibit 6**.

10.     On July 23, 2019, the USPTO duly and lawfully issued the '642 Patent, titled "REMOVABLE TIPS FOR USE WITH SKIN TREATMENT SYSTEMS."  A true and correct copy of the '642 Patent is attached hereto as **Exhibit 7.**

11.     HydraFacial is the owner of all right, title, and interest in the Asserted Patents. Accordingly, HydraFacial is the patentee for purposes of standing to assert the Asserted Patents in this action under 35 U.S.C. § 281.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over HydraFacial's patent infringement claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (action arising under an Act of Congress relating to patents) because this action arises under the Patent Laws of the United States, Title 35 of the United States Code.

13.     This Court has personal jurisdiction over Bellatrix because, on information and belief, it is a Florida limited liability company that maintains continuous, systematic, and substantial contacts with the State of Florida.  For example, HydraFacial is informed and believes, and thereon alleges, that Bellatrix has been selling and offering for sale infringing products in this judicial district, and committing acts of infringement in this judicial district, including but not limited to, selling infringing products in this district to consumers and/or retailers and selling into the stream of commerce knowing such products would be sold in Florida and this district. Therefore, the Court's exercise of personal jurisdiction over Bellatrix is appropriate under the applicable laws and would not offend traditional notions of fair play and substantial justice.

14.     Pursuant to 28 U.S.C. §§ 1391 and 1400(b), venue is proper in this District as to Defendant because Bellatrix is organized under the laws of Florida and resides in this District and because Bellatrix has committed acts of infringement by making, using, selling, offering to sell, and/or importing into the United States infringing products in this judicial district.

## BACKGROUND

15.     HydraFacial is a worldwide leader in the design, development, manufacture, and sale of high-quality skin resurfacing and rejuvenation systems, including hydrodermabrasion systems.  These systems rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with therapeutic solutions, called "serums," that moisturize and protect the treated skin surface.  HydraFacial markets and sells these systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas.

16.     HydraFacial's latest flagship system is its revolutionary HydraFacial Syndeo® system, which is the premier hydrodermabrasion system sold in the United States.  HydraFacial's revolutionary HydraFacial Syndeo® system is protected by numerous United States patents.  In addition to the Syndeo™ system, HydraFacial has designed, developed, manufactured and sold other patented hydrodermabrasion systems, including: the HydraFacial® Tower™, the HydraFacial® Allegro™, the HydraFacial® Elite™, systems (collectively, "HydraFacial® Systems").

17.     Defendant is in the business of sourcing, advertising, offering for sale, and selling aesthetic medical devices, including hydrodermabrasion devices that compete with the HydraFacial® Systems.

18.     Bellatrix markets and sells these hydrodermabrasion devices throughout the United States to end users, such as dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas.  Bellatrix also offers components, consumables, warranties, and training services for end users.

19.     One of the competing hydrodermabrasion devices used, sold, offered for sale, and/or imported into the United States by Bellatrix is known as the GENESIS system ("Genesis"), a skin treatment system.  Bellatrix has offered the Genesis system for sale on its website, <https://bellatrixusa.com/>, and has advertised elsewhere online including social media platforms such as YouTube, Instagram, Facebook, and others. *See, e.g.*, **Exhibit 8** (Bellatrix's webpage for selling the Genesis system); **Exhibit 9** (Instagram posting promoting the Genesis system).

20.     Bellatrix also offers for sale a hydrodermabrasion system known as the Belle Lueur Pro ("Belle Lueur Pro") (collectively with the Genesis system, the "Accused Products").  Bellatrix offers the Belle Lueur Pro for sale on its website and has advertised elsewhere online including social media platforms such as Instagram and Facebook.  *See, e.g.*, **Exhibit 10** (Bellatrix's webpage for the Belle Lueur Pro system); **Exhibit 11** (social media post announcing the Belle Lueur Pro).

21.     The Accused Products are hydrodermabrasion devices used for treating the skin surface of a patient.  The Accused Products, as depicted below, have a handpiece that includes a tip at the end of the handpiece ("Handpiece").



*See* **Exhibit 12** (Genesis system hydrodermabrasion webpage) at 4, 9.




**Exhibit 10** (Belle Lueur Pro webpage).

22.     The Handpiece includes a Belle Luxe tip ("Luxe Tip") that contains abrasive edges to exfoliate the skin, and multiple openings for suction to simultaneously cleanse the skin and remove waste.  Upon information and belief, the Genesis system and Belle Lueur Pro system both use the Luxe Tip.



*See e.g.,* **Ex. 12** at 1, **Ex. 11** at 0:36.

23.     The Accused Products include a manifold and a console with a touch screen that allows end users to select the hydrodermabrasion functionalities, including controlling the selection of solutions, flow of solutions, and vacuum suction.  The Accused Products include a vacuum source that creates suction for the extraction and exfoliation of the patient's skin.



**Ex. 12** at 9; **Ex. 10** at 3.

The handpiece of the Accused Products is connected to the console via tubing. One end of the tubing is connected to the handpiece, and the other end couples to the console.

Genesis System                                    Belle Lueur Pro System



**Ex. 12** at 9; **Ex. 10** at 2.

24.     On information and belief, the tubing includes at least a first conduit for delivery of serums and a second conduit for extraction of debris and spent fluid.

25.     The Accused Products include fluid containers that hold serums for treating the skin of a patient.  **Ex. 12** at 7 ("Genesis boasts the advantage of multiple hydro solution jars. This feature allows professionals to switch between various solutions."); *see also* **Ex. 10** at 3 (describing two serums for use in the Belle Lueur Pro system).

26.     On information and belief, the Accused products include a waste container inside the console.

Genesis System                                    Belle Lueur Pro System

Waste Container

Waste container (not shown)

Fluid Containers

**Ex. 12** at 7; **Ex. 10** at 2.

27.     The Accused Products deliver fluid from treatment solution containers to the skin.

Bellatrix offers for sale and sells customizable treatment solutions to its customers and end users.

*See* **Ex. 13** (advertising serums for use in hydrodermabrasion systems).



## BelleLueur Serums – 2 Bottle Bundle

**$135.00**

### Belle Lueur Professional Serum Bundle – 16oz Stellar Bright & Calm Radiance

Enhance your skincare offerings with the **Belle Lueur Professional Serum Bundle**, featuring **Stellar Bright** and **Calm Radiance**—two carefully formulated serums designed to support a fresh, radiant look.

### Stellar Bright Serum – A Luminous Boost for Skin

**Ex. 13** at 1.

28.     Bellatrix markets the Accused Products online, including social media platforms, such as Instagram, Facebook and others, and uses brand representatives to advertise and sell its products and services.

29.     Bellatrix also marketed its Genesis system in comparison to the "HydraFacial Device," noting that HydraFacial's system is "great at what it does, [but is] mostly focused on hydrodermabrasion." **Exhibit 14** at 2. Bellatrix's analysis of the two products led to the following conclusion: "While the Hydrafacial Device is a strong competitor in the market, the Genesis Device emerges as the more advanced and versatile option for med spas." *Id.* at 3.

30.     On information and belief, Bellatrix has offered instructional manuals, trainings, and demonstrations on the use of the Accused Products to customers, end users and others by at least December 2023, and continues to do so.

31.     Defendant has infringed and continues to infringe the Asserted Patents. Defendant knows, and knew, its actions constituted and continue to constitute, infringement of the Asserted Patents.

32.     HydraFacial has never authorized Defendant to make, use, import, offer for sale, and/or sell the Accused Products or any components thereof that perform the accused functionalities.

33.     Each of Defendant's acts of infringement are and were willful, intentional, and deliberate. Defendant has infringed and continues to infringe each of the Asserted Patents with reckless disregard for Plaintiff's patent rights. Defendant knows, or should know, and knew, or should have known, that its actions constituted and continue to constitute infringement of the Asserted Patents.

<u>**COUNT I**</u>
**Infringement of U.S. Patent No. 9,550,052**

34.     HydraFacial incorporates by reference and realleges the preceding paragraphs as if set forth fully herein.

35.     Defendant knowingly and intentionally infringed and continues to infringe the '052 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

36.     For example, as set forth in the claim chart below, the Genesis system and Belle Lueur Pro system each infringe at least Claim 1 of the '052 Patent.

| Claim Language | Accused Products |
|---|---|
| 1[pre]  A  system  for performing  a  skin treatment procedure, the system comprising: | To the extent that the preamble is limiting, the Genesis system and Bella Lueur Pro system are each a system for performing a skin treatment procedure.<br><br>Bellatrix has marketed the Genesis treatment as its "flagship treatment device" and "a remarkable device in skincare technology." **Ex. 12** at 1, 9.  The Genesis device is "well-known for [its] ability to improve skin health." **Ex. 14** at 2.<br><br>The Belle Lueur Pro "helps you offer luxurious, appearance-enhancing treatments designed to support radiant, refreshed-looking skin." **Ex. 10** at 2.  Further, the "Hydro Exfoliation (Hydrodermabrasion)" modality of the Belle Lueur Pro system is "[i]deal for use in professional facial treatments." *Id.* |
| 1[a][i]  a  console including a manifold, | The Genesis system and Bella Lueur Pro system each have a console including a manifold.<br><br>As shown in the image below, the Genesis system comprises a console including a manifold: |

| Claim Language | Accused Products |
|---|---|
| |  *See* **Ex. 12** at 9.  Bellatrix also advertises that the "Genesis boasts the advantage of multiple hydro solution jars. This feature allows professionals to switch between various solutions." *Id.* at 7.  This switching between multiple solutions occurs via a manifold. As shown in the image below, the Belle Lueur Pro system comprises a console including a manifold:  **Ex. 10** at 4. One embodiment of the manifold disclosed in the '052 Patent is "a manifold system 24 that holds containers 26 containing treatment fluids." '052 Patent at 14:26–28.  The Genesis system and Belle Lueur Pro system each have a manifold structure in fluid communication with the fluid containers containing fluid treatment material. |

| Claim Language | Accused Products |
|---|---|
| 1[a][ii] the manifold being in fluid communication with a first fluid container and at least a second fluid container, | The manifold of the Genesis system and Bella Lueur Pro system each is in fluid communication with a first fluid container and at least a second fluid container.<br><br>As shown in the photo below, the fluid containers couple to the manifold of the Genesis system:<br><br><br><br>*See* **Ex. 12** at 9.  Bellatrix also advertises that the "Genesis boasts the advantage of multiple hydro solution jars. This feature allows professionals to switch between various solutions." *Id.* at 7.  The manifold of the Genesis system is in fluid communication with the containers housing solutions to perform this switching between multiple containers.<br><br>As shown in the photo below, the fluid containers couple to the manifold of the Belle Lueur Pro system:<br><br><br><br>**Ex. 10** at 4.  The manifold is in fluid communication with the fluid containers to switch between the fluids in the two fluid containers. |

| Claim Language | Accused Products |
|---|---|
| 1[a][iii] the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid | The first fluid container and the at least the second fluid container of the Genesis system and Belle Lueur Pro system are each configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid.<br><br>Bellatrix touts its Genesis system as having "the advantage of multiple hydro solution jars. This feature allows professionals to switch between various solutions." *See* **Ex. 12** at 7.  Moreover, a video of Bellatrix's Genesis system states that a user can "control the vacuum and flow of serums" of its "hydrodermabrasion" modality.  **Ex. 15** at 0:49-1:01.  These solutions/serums are treatment materials for a skin treatment procedure.<br><br>The Belle Lueur Pro system has a "Hydro Exfoliation (Hydrodermabrasion)" modality that is a "water-powered exfoliation process" that is "[i]deal for use in professional facial treatments." **Ex. 10** at 1.  The Belle Lueur Pro preorder page includes, under its "Ingredients" tab, the "Calm Radiance Hydro Serum" and "Stellar Bright Hydro Serum" for use in the hydrodermabrasion modality.  *Id.* at 3.  These serums are contained by the first fluid container and the at least the second fluid container for a skin treatment procedure (hydrodermabrasion). |
| 1[b] a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The Genesis System and Belle Lueur Pro system each have a handpiece assembly comprising a tip, where the tip is configured to contact a skin surface of a subject.<br><br>As shown in the image below, the Genesis system includes a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject.<br><br><br>**Ex. 12** at 4, 9. |

| Claim Language | Accused Products |
|---|---|
| | The Genesis system's handpiece assembly includes a tip attached to the main body that is configured to contact a skin surface of a subject, as shown below.<br><br><br><br>*See e.g.,* **Ex. 12** at 1.<br><br>As shown in the image below, the Belle Lueur Pro system includes a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject.<br><br><br><br>**Ex. 10** at 3.<br><br>The Belle Lueuer Pro system's handpiece assembly includes a tip attached to the main body that is configured to contact a skin surface of a subject, as shown below. |

| Claim Language | Accused Products |
|---|---|
| |  **Ex. 11** at 0:36. |
| 1[c] a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | The Genesis system and Belle Lueur Pro system each have a supply conduit that places the manifold of the console in fluid communication with the handpiece assembly. A distal end of the supply conduit for each system is configured to couple to the handpiece assembly.<br><br>As shown in the images below, the Genesis system comprises tubing that includes a first conduit that places the manifold of the console in fluid communication with the handpiece assembly.<br><br>*See* **Ex. 12** at 9. |

| Claim Language | Accused Products |
|---|---|
| | <br><br>**Ex. 15** at 0:38.  The supply conduit, *e.g.* the first conduit of the tubing, is in fluid communication with the manifold via a coupling to the console, and the supply conduit also couples to the handpiece assembly.  *See id.*<br><br>As shown in the images below, the Belle Lueur Pro system comprises tubing that includes a first conduit that connects the manifold of the console in fluid communication with the handpiece assembly.<br><br>**Ex. 10** at 1. The supply conduit, *e.g.* the first conduit of the tubing, is in fluid communication with the manifold via a coupling to the console, and the supply conduit also couples to the handpiece assembly.  *See id.* |

| Claim Language | Accused Products |
|---|---|
| 1[d] wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The manifolds of the Genesis system and Bella Lueur Pro system are each configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit.<br><br>The supply conduit of the Accused Products is in fluid communication with the manifold via a coupling to the console shown below, and the supply conduit also couples to the handpiece assembly:<br><br><br><br>**Ex. 12** at 9; **Ex. 10** at 2; *see also* limitation 1[c], *supra*.<br><br>Bellatrix also advertises that the "Genesis boasts the advantage of multiple hydro solution jars. This feature allows professionals to switch between various solutions." *Id.* at 7; *see also* **Ex. 10** at 3 (describing two serums for use in the Belle Lueur Pro system). In its video unboxing a Genesis system, Bellatrix states that "with the touch of a finger, you can switch serums and clean your handpiece." **Ex. 15** at 0:56-1:00. As described above, the containers are coupled to the manifold, and the fluid in the containers is delivered to the skin of a patient through the supply conduit. *See* limitations 1[a][i], 1[a][ii], and 1[c], *supra*. Thus, the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit. |
| 1[e] a vacuum source; | The Genesis system and Belle Lueur Pro system each comprise a vacuum source.<br><br>In Bellatrix's video unboxing a Genesis system, it says that the Genesis system performs hydrodermabrasion in which a user can "control the vacuum and flow of serums." **Ex. 15** at 0:50-0:56. Similarly, Bellatrix says that the Belle Lueur Pro system's "water-powered exfoliation |

| Claim Language | Accused Products |
|---|---|
|  | process helps gently remove surface buildup." **Ex. 10** at 2.  This removal occurs via a vacuum source. |
| 1[f] a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and | The Genesis system and Belle Lueur Pro system each comprises a waste conduit, *e.g.* a second conduit in the tubing, in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source.<br><br>As shown in the photo below, the Genesis system has a waste conduit, e.g. the second conduit in the tubing, that is in fluid communication with the tip of the handpiece assembly.<br><br><br>*See* **Ex. 12** at 9.<br><br><br>**Ex. 15** at 0:38.  Upon information and belief, the waste conduit assists in the removal of waste away from the skin surface of a subject during a skin |

| Claim Language | Accused Products |
|---|---|
|  | treatment procedure.  For example, the Genesis system has a waste "water bottle" that collects waste from the waste conduit, as shown below:<br><br><br>**Ex. 15** at 0:43.  The waste from the tip of the handpiece assembly is moved through the waste conduit to the waste container by a vacuum force.  Thus, the waste conduit is operatively coupled to the vacuum source. |

| Claim Language | Accused Products |
|---|---|
| | Similarly, the Belle Lueur Pro system has a waste conduit, e.g. the second conduit in the tubing, that is in fluid communication with the tip of the handpiece assembly.<br><br><br><br>**Ex. 10** at 1.<br><br>*Id.* at 4.<br><br>Upon information and belief, the waste conduit assists in the removal of waste away from the skin surface of a subject during a skin treatment procedure.   For example, the Belle Lueur Pro system has a waste container that collects waste from the waste conduit, as shown below: |

| Claim Language | Accused Products |
|---|---|
| |  *See id.* at 1.  Bellatrix says that the Belle Lueur Pro system's "water-powered exfoliation process helps gently remove surface buildup."  **Ex. 10** at 2.  This "surface buildup" is waste removed from the skin surface during a skin treatment procedure and requires the waste conduit be operatively coupled to the vacuum source. |
| 1[g] wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and | The Genesis system and Belle Lueur Pro system each are configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly. The Genesis system has a touch screen that contains icons allowing the user to select the particular treatment material to be delivered through the supply conduit to the handpiece assembly: |



Ex. 15 at 0:52; *see also* Ex. 12 at 9 ("Genesis boasts an intuitive touchscreen interface for easy navigation and customized treatment settings…."); *id.* at 6 (describing the touch screen).

Similarly, the Belle Lueur Pro system has a touch screen, as shown in the image below:



Ex. 10 at 3.  Upon information and belief, the touch screen contains icons allowing the user to select the particular treatment material to be delivered through the supply conduit to the handpiece assembly.

23

| Claim Language | Accused Products |
|---|---|
| 1[h] wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. | Upon information and belief, when the vacuum source of the Genesis system and the Belle Lueur Pro system is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. *See* **Ex. 15** at 0:50-0:56 (describing operation of hydrodermabrasion functionality for Genesis system); **Ex. 11** at 0:34-0:36 (showing simultaneous drawing of treatment material from the selected fluid container and removing of waste from the skin surface via the waste conduit for Belle Lueur Pro system); *see also* **Ex. 10** at 2 (describing hydrodermabrasion of Belle Lueur Pro system "gently remov[ing]" waste while associating modality with serums for delivery to skin). |

37.     Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continues to do so, at least one of the Accused Products in a manner that infringes the '052 Patent, including for at least the reasons discussed above.

38.     On information and belief, Defendant has also induced and/or is inducing the infringement of the '052 Patent by making, using, importing, offering for sale, and/or selling the infringing Genesis system and the infringing Belle Lueur Pro system, and by continuing to make, use, import, offer for sale, and sell the infringing Belle Lueur Pro system. *See e.g.,* **Exs. 8-15**. The Accused Products—as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringe the '052 Patent. Defendant evinced the specific intent for its customers, end users, and others to infringe the '052 Patent and actively induced its customers' infringing acts through its provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id.* Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '052 Patent and continue to do so. *See id.*

39.     Defendant also had knowledge of the '052 Patent and that the Genesis system infringes the '052 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter.  *See* **Ex. 19**.  Defendant had knowledge that its Belle Lueur Pro system infringes the '052 Patent at the same time, but in any event, no later than May 30, 2025, when Bellatrix received HydraFacial's second cease and desist letter.  **Ex. 20**.  Defendant gained further knowledge of its infringement by way of this Complaint's filing and/or this Complaint's service upon Defendant.

40.     The acts of Defendant alleged herein constitute infringement of the '052 Patent under one or more subsections of 35 U.S.C. § 271.

41.     Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continue to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products constituting material parts of the invention of at least Claim 1 of the '052 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

42.     As a direct and proximate result of Defendant's infringement of the '052 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendant, jointly and severally, the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

43.     Further, Defendant's acts of infringement of the '052 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '052 Patent.  On information and belief, Defendant has acted and is continuing to act despite an

objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk—at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters. *See* **Exs. 19** and **20**. Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

44.     Defendant's acts of infringement of the '052 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

**COUNT II**
**Infringement of U.S. Patent No. 11,865,287**

45.     HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

46.     Defendant knowingly and intentionally infringed and continues to infringe the '287 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

47.     For example, as set forth in the claim chart below, the Genesis system and Belle Lueur Pro system each infringe at least Claim 11 of the '287 Patent.

| Claim Language | Accused Products |
|---|---|
| 11[pre] A skin treatment apparatus comprising: | To the extent that the preamble is limiting, the Genesis system and Belle Lueur system are each a skin treatment apparatus.  *See* '052 Patent, limitation 1[pre], *supra*. |

| Claim Language | Accused Products |
|---|---|
| 11[a] a console that includes a fluid control member that is configured to be in fluid communication with at least a first container and a second container when the first container and the second container are connected to the fluid control member; | The Genesis system and Belle Lueur Pro system each have a console that includes a fluid control member that is configured to be in fluid communication with at least a first container and a second container when the first container and the second container are connected to the fluid control member.<br><br>As shown in the image below, the Genesis system comprises a console including at least one fluid control member:<br><br><br><br>**Ex. 12** at 9.  As shown in the image above, the Genesis system has a first container and a second container.  These containers have fluid lines that place the containers in fluid communication with a handpiece assembly for performing a hydrodermabrasion treatment via the fluid control member, as shown below:<br><br><br><br>**Ex. 12** at 9. |

| Claim Language | Accused Products |
|---|---|
| | As shown in the image below, the Belle Lueur Pro system comprises a console including a manifold:<br><br><br><br>**Ex. 10** at 4.  As shown in the image above, the Belle Lueur Pro system has a first container and a second container.  These containers have fluid lines that place the containers in fluid communication with a handpiece assembly for performing a hydrodermabrasion treatment via the fluid control member, as shown below:<br><br><br><br>*Id.* |
| 11[b]   a   handpiece assembly  configured  to contact a skin surface of a subject; | The Genesis system and Belle Lueur Pro system each have a handpiece assembly configured to contact a skin surface of a subject.  *See* '052 Patent, limitation 1[b], *supra*. |

| Claim Language | Accused Products |
|---|---|
| 11[c] a waste conduit configured to be in fluid communication with the handpiece assembly and a vacuum source to move waste away from the handpiece assembly when the waste conduit and the handpiece assembly are each connected to the console; and | The Genesis system and Belle Lueur Pro system each have a waste conduit configured to be in fluid communication with the handpiece assembly and a vacuum source to move waste away from the handpiece assembly when the waste conduit and the handpiece assembly are each connected to the console.  *See* '052 Patent, limitations 1[e] and 1[f], *supra*.  The handpiece assembly and waste conduit are each connected to the console via the tubing connector. |
| 11[d] wherein when each of the first container and the second container are connected to the console, the fluid control member is configured to be in fluid communication with each of the first container and the second container; | When each of the first container and the second container of the Genesis system and the Belle Lueur Pro system are connected to the console, the fluid control member is configured to be in fluid communication with each of the first container and the second container.  *See* '287 Patent, limitation 11[a]. |
| 11[e] wherein when the handpiece assembly is connected to the console, the fluid control member is configured to be in fluid communication with the handpiece assembly; | When the handpiece assembly of the Genesis system and the Belle Lueur Pro system is connected to the console, the fluid control member is configured to be in fluid communication with the handpiece assembly.<br><br>As shown in the images below, the Genesis system includes tubing that places the fluid control member of the console in fluid communication with the handpiece assembly.<br><br><br><br>*See* **Ex. 12** at 9. |

| Claim Language | Accused Products |
|---|---|
| |  **Ex. 15** at 0:38.   The tubing of the handpiece assembly is in fluid communication with the fluid control member via a coupling to the console, and the tubing also couples to the handpiece assembly. *See id*.<br><br>As shown in the images below, the Belle Lueur Pro system includes tubing that places the fluid control member of the console in fluid communication with the handpiece assembly.<br><br>**Ex. 10** at 1. The tubing of the handpiece assembly is in fluid communication with the fluid control member via a coupling to the console, and the tubing also couples to the handpiece assembly. *See id*. |

| Claim Language | Accused Products |
|---|---|
| 11[f][i] wherein when (i) each of the first container and the second container contains treatment material, (ii) the first container and the second container are connected to the console, and (iii) the handpiece assembly is connected to the console, | The Genesis system and Belle Lueur Pro system each have (1) a first container and a second container that contains a treatment material, (2) the first container and the second container are connected to the console, and (3) the handpiece assembly is connected to the console. *See* '052 Patent, limitation 1[a][iii] and '287 Patent, limitations 11[d] and 1[e], *supra*. |
| 11[f][ii] the skin treatment apparatus is configured to selectively draw treatment material from the first container or the second container to the handpiece assembly using, at least in part, a vacuum created along a distal end of the handpiece assembly by the vacuum source. | The Genesis system and Belle Lueur Pro system both are configured to selectively draw treatment material from the first container or the second container to the handpiece assembly using, at least in part, a vacuum created along a distal end of the handpiece assembly by the vacuum source. *See* '052 Patent, limitation 1[h], *supra*. |

48.     On information and belief, Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continue to do so, at least one of the Accused Products in a manner that infringes the '287 Patent, including for at least the reasons discussed above.

49.     On information and belief, Defendant has also induced and/or are inducing the infringement of the '287 Patent by marketing, offering for sale, and selling the infringing Genesis system and the infringing Belle Lueur Pro system, and by continuing to make, use, import, offer for sale, and sell the infringing Belle Lueur Pro system. *See e.g.,* **Exs. 8-15**. The Accused Products—as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringe the '287 Patent. Defendant evinced the specific intent for its customers, end users, and others to infringe the '287 Patent and actively induced its customers' infringing acts through Defendant's provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id.* Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '287 Patent and continue to do so. *See id.*

50.     Defendant also had knowledge of the '287 Patent and that the Genesis system infringes the '287 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter. *See* **Ex. 19**. Defendant had knowledge that its Belle Lueur Pro system infringes the '287 Patent at the same time, but in any event, no later than May 30, 2025, when Bellatrix received HydraFacial's second cease and desist letter. **Ex. 20**. Defendant gained further knowledge of its infringement by way of this Complaint's filing and/or this Complaint's service upon Defendant.

51.     The acts of Defendant alleged herein constitute infringement of the '287 Patent under one or more subsections of 35 U.S.C. § 271.

52.     Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products, constituting material parts of the invention of at least Claim 11 of the '287 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

53.     As a direct and proximate result of Defendant's infringement of the '287 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendant the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

54.     Further, Defendant's acts of infringement of the '287 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '287 Patent.  On information and belief, Defendant has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk— at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters. *See* **Exs. 19** and **20**.  Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

55.     Defendant's acts of infringement of the '287 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling

HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

## COUNT III
### Infringement of U.S. Patent No. 11,446,477

56.     HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

57.     Defendant knowingly and intentionally infringed and continues to infringe the '477 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products system.

58.     For example, as set forth in the claim chart below, the Genesis system and Belle Lueur Pro system each infringe at least Claim 1 of the '477 Patent.

| Claim Language | Accused Products |
|---|---|
| 1[pre]   A   system   for performing   a   skin treatment procedure, the system comprising: | To the extent that the preamble is limiting, the Genesis system and Belle Lueur Pro system each are a system for performing a skin treatment procedure.  *See* '052 Patent, limitation 1[pre], *supra*. |
| 1[a][i]   a   manifold system   in communication   with   a first   container   and   at least a second container, | The Genesis system and Belle Lueur Pro system each include a manifold system in communication with a first container and at least a second container.  *See* '052 Patent, limitation 1[a][ii], *supra*. |
| 1[a][ii] wherein each of the   first   container   and the   at   least   second container is configured to   contain   a   treatment material, | Each of the first container and the at least second container of the Genesis system and the Belle Lueur Pro system are configured to contain a treatment material for a skin treatment procedure.  *See* '052 Patent, limitation 1[a][iii], *supra*. |
| 1[a][iii]   the   manifold system being positioned in or on a console; | The manifold system of the Genesis system and the Belle Lueur Pro system is positioned in or on a console.

As shown in the image below, the Genesis system comprises a console with a manifold system positioned inside: |

| Claim Language | Accused Products |
|---|---|
| | <br><br>*See* **Ex. 12** at 9.  Bellatrix also advertises that the "Genesis boasts the advantage of multiple hydro solution jars.  This feature allows professionals to switch between various solutions."  *Id.* at 7.   This switching between multiple solutions occurs via a manifold system in the console.<br><br>As shown in the image below, the Belle Lueur Pro system comprises a console with a manifold system positioned inside:<br><br><br><br>**Ex. 10** at 4.<br><br>The manifold system disclosed in the '477 Patent is "a manifold system 24 that holds containers 26 containing treatment fluids."  '477 Patent at 14:30–32.  The Genesis system and Belle Lueur Pro system each have a manifold structure in fluid communication with the fluid containers containing fluid treatment material. |

| Claim Language | Accused Products |
|---|---|
| 1[b] a supply conduit placing the manifold system in fluid communication with a handpiece assembly; | The Genesis system and Belle Lueur Pro system each have a supply conduit placing the manifold system in fluid communication with a handpiece assembly. *See* '052 Patent, limitation 1[c], *supra*. |
| 1[c] wherein the handpiece assembly comprises a working end having a skin contact surface; | The handpiece assembly of the Genesis system and Belle Lueur Pro system comprises a working end having a skin contact surface. *See* '052 Patent, limitation 1[b], *supra*. |
| 1[d] a vacuum source; | The Genesis system and Belle Lueur Pro system each comprise a vacuum source. *See* '052 Patent, limitation 1[e], *supra*. |
| 1[e] a waste conduit in fluid communication with the handpiece assembly and the vacuum source to move waste away from the working end of the handpiece assembly during a skin treatment procedure; and | The Genesis system and Belle Lueur Pro system each have a waste conduit in fluid communication with the handpiece assembly and the vacuum source to move waste away from the working end of the handpiece assembly during a skin treatment procedure. *See* '052 Patent, limitation 1[f], *supra*. |
| 1[f] at least one control to permit control of a flow of treatment material from the first container and the at least second container through the supply conduit to the handpiece assembly; | The Genesis system and Belle Lueur Pro system each have at least one control to permit control of a flow of treatment material from the first container and the at least second container through the supply conduit to the handpiece assembly.<br><br>As shown in the images below, the Genesis system has a touch screen that permits control of the flow of treatment material from the selected container, including the first container and the at least second container, through the supply conduit to the handpiece assembly. This control can occur two ways: the user can select which container the system will draw fluid from (and thus controls the flow of treatment material from the first container or the at least second container), or the user can control the flow rate of the treatment material from the selected controller via a flow rate controller. |

| Claim Language | Accused Products |
|---|---|
|  | <br><br>**Ex. 15** at 0:52; *see also* **Ex. 12** at 9 ("Genesis boasts an intuitive touchscreen interface for easy navigation and customized treatment settings…."); *id.* at 6 (describing the touch screen).<br><br>Similarly, the Belle Lueur Pro system has a touch screen, as shown in the image below:<br><br>**Ex. 10** at 3.  Upon information and belief, the touch screen contains icons allowing the user to select the particular treatment material to be delivered through the supply conduit to the handpiece assembly, thus controlling |

| Claim Language | Accused Products |
|---|---|
| | the flow of treatment material. Upon information and belief, the user can also use the touchscreen to control the flow rate of the treatment material from the selected controller via a flow rate controller. |
| 1[g] wherein the vacuum source is configured to create a suction force within the waste conduit and along the working end of the handpiece assembly to help remove waste from the handpiece assembly via the waste conduit and to help transfer at least one treatment material from the manifold system to the handpiece assembly. | The vacuum source of the Genesis system and the Belle Lueur Pro system is configured to create a suction force within the waste conduit along the working end of the handpiece assembly via the waste conduit and to help transfer at least one treatment material from the manifold system to the handpiece assembly. *See* '052 Patent, limitation 1[h], *supra*; '287 Patent, limitation 1[f][ii], *supra*. |

59.     On information and belief, Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continues to do so, at least one of the Accused Products in a manner that infringes the '477 Patent, including for at least the reasons discussed above.

60.     On information and belief, Defendant has also induced and/or is inducing the infringement of the '477 Patent by making, using, importing, offering for sale, and/or selling the infringing Genesis system and the infringing Belle Lueur Pro system, and by continuing to make, use, import, offer for sale, and/or sell the infringing Belle Lueur Pro system. *See e.g.,* **Exs. 8-15**. The Accused Products—as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringes the '477 Patent.  Defendant evinced the specific intent for its customers, end users, and others to infringe the '477 Patent and actively induced its customers' infringing acts through its provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*.  Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '477 Patent and continue to do so. *See id*.

61.     Defendant also had knowledge of the '477 Patent and that the Genesis system infringes the '477 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter. *See* **Ex. 19**.  Defendant had knowledge that its Belle Lueur Pro system infringes the '477 Patent at the same time, but in any event, no later than May 30, 2025, when Bellatrix received HydraFacial's second cease and desist letter.  **Ex. 20**.  Defendant gained further knowledge of its infringement by way of this Complaint's filing and/or this Complaint's service upon Defendant.

62.     The acts of Defendant alleged herein constitute infringement of the '477 Patent under one or more subsections of 35 U.S.C. § 271.

63.     Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products constituting material parts of the invention of at least Claim 1 of the '477 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

64.     As a direct and proximate result of Defendant's infringement of the '477 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendant, jointly and severally, the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

65.     Further, Defendant's acts of infringement of the '477 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '477 Patent.  On information and belief, Defendant has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk— at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters.  *See* **Exs. 19** and **20**.  Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

66.     Defendant's acts of infringement of the '477 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling

HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe

HydraFacial's patent rights and cause HydraFacial further irreparable harm.

## COUNT IV
### Infringement of U.S. Patent No. 12,053,607

67.     HydraFacial incorporates by references and realleges the preceding paragraphs as

if set forth fully herein.

68.     Defendant knowingly and intentionally infringed and continues to infringe the '607

Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale,

and/or importation into the United States of the Accused Products.

69.     For example, as set forth in the claim chart below, the Genesis system and Belle

Lueur Pro system each infringe at least Claim 1 of the '607 Patent.

| Claim Language | Accused Product |
|---|---|
| 1[pre] A skin treatment system, comprising: | To the extent that the preamble is limiting, the Genesis system and the Belle Lueur Pro system are each a skin treatment system. *See* '052 Patent, limitation 1[pre], *supra*. |
| 1[a]     a     console configured to receive a first     container containing     a     first treatment material and a second     container containing   a   second treatment material; | The Genesis system and Belle Lueur Pro system each have a console configured to receive a first container containing a first treatment material and a second container containing a second treatment material.  *See* '052 Patent, limitations 1[a][i], 1[a][ii], and 1[a][iii], *supra*. |
| 1[b][i]     a     handpiece configured to couple to a tip that can be  pressed against skin to perform skin treatment; | The Genesis system and Belle Lueur Pro system each have a handpiece that is configured to couple to a tip that can be pressed against skin to perform skin treatment.  *See* '052 Patent, limitation 1[b], *supra*. |
| 1[b][ii]  a  supply  line connected between  the handpiece     and     the console for sequentially delivering     treatment material to the handpiece from the first container or the second container; | The Genesis system and Belle Lueur Pro system each comprise a supply line connected between the handpiece and the console for sequentially delivering treatment material to the handpiece from the first container or the second container.<br><br>As described above, the Genesis system and the Belle Lueur Pro system each     comprise     a     supply     conduit     connected     between     the handpiece/handpiece  assembly  and  the  console.   *See*  '052  Patent, |

| Claim Language | Accused Product |
| --- | --- |
| | limitation 1[c], *supra*.  The supply line is a supply conduit.  As described below, the delivery of treatment material for the Genesis system and the Belle Lueur Pro system each occurs sequentially.<br><br>The Genesis system has a touch screen that contains icons allowing the user to select the particular treatment material to be delivered through the supply line to the handpiece:<br><br><br><br>**Ex. 15** at 0:52; *see also* **Ex. 12** at 9 ("Genesis boasts an intuitive touchscreen interface for easy navigation and customized treatment settings…."); *id.* at 6 (describing the touch screen).  Upon information and belief, when a user selects a container, the previously selected container is deselected.  Thus, the Genesis system delivers treatment materials sequentially.<br><br>Similarly, the Belle Lueur Pro system has a touch screen, as shown in the image below: |

| Claim Language | Accused Product |
|---|---|
| | <br><br>**Ex. 10** at 3.  Upon information and belief, the touch screen contains icons allowing the user to select the particular treatment material to be delivered through the supply line to the handpiece.  When a user selects a container, the previously selected container is deselected.  Thus, the Genesis system delivers treatment materials sequentially. |
| 1[c]   a   waste   line connected   between   the handpiece   and   the console; and | The Genesis system and Belle Lueur Pro system each comprise a waste line connected between the handpiece and the console.  *See* '052 Patent, limitation 1[f], *supra*; '287 Patent, limitation 11[c], *supra*. |
| 1[d] a vacuum source configured to create a vacuum that draws waste material   from   the handpiece through the waste line for disposal and that draws treatment material from either the first container or the second container to the handpiece when the tip is pressed against skin. | The Genesis system and Belle Lueur Pro system each comprise a vacuum source configured to create a vacuum that draws waste material from the handpiece through the waste line for disposal and that draws treatment material from either the first container or the second container to the handpiece when the tip is pressed against skin.  *See* '052 Patent, limitations 1[e] and 1[h], *supra*. |

70.     On information and belief, Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continue to do so, at least one of the Accused Products in a manner that infringes the '607 Patent, including for at least the reasons discussed above.

71.     On information and belief, Defendant has also induced and/or are inducing the infringement of the '607 Patent by marketing, offering for sale, and selling the infringing Genesis

system and the infringing Belle Lueur Pro system, and by continuing to make, use, import, offer for sale, and sell the infringing Belle Lueur Pro system. *See e.g.,* **Exs. 8-15**. The Accused Products—as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringe the '607 Patent. Defendant evinced the specific intent for its customers, end users, and others to infringe the '607 Patent and actively induced its customers' infringing acts through Defendant's provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*. Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '607 Patent and continue to do so. *See id*.

72.     Defendant also had knowledge of the '607 Patent and that the Genesis system infringes the '607 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter. *See* **Ex. 19**. Defendant had knowledge that its Belle Lueur Pro system infringes the '607 Patent at the same time, but in any event, no later than May 30, 2025, when Bellatrix received HydraFacial's second cease and desist letter. **Ex. 20**. Defendant gained further knowledge of its infringement by way of this Complaint's filing and/or this Complaint's service upon Defendant.

73.     The acts of Defendant alleged herein constitute infringement of the '607 Patent under one or more subsections of 35 U.S.C. § 271.

74.     Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products constituting material parts of the invention of at least Claim 1 of the

'607 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

75.    As a direct and proximate result of Defendant's infringement of the '607 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendant, jointly and severally, the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

76.    Further, Defendant's acts of infringement of the '607 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '607 Patent.  On information and belief, Defendant has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk— at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters.  *See* **Exs. 19** and **20**.  Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

77.    Defendant's acts of infringement of the '607 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

## COUNT V
### Infringement of U.S. Patent No. 8,048,089

78.    HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

79.     Bellatrix knowingly and intentionally infringed and continues to infringe the '089

Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale,

and/or importation into the United States of the Accused Products and the Luxe Tips used

therewith.

80.     For example, as set forth in the claim chart below, the Luxe Tip infringes at least

Claim 1 of the '089 Patent.

| Claim Language | Luxe Tip |
|---|---|
| 1[pre] A tip configured for use in a skin treatment system, comprising: | To the extent that the preamble is limiting, the Luxe Tip is configured for use in a skin treatment system.<br><br>Bellatrix has marketed the Luxe Tips as "crafted to support effective exfoliation and maintain optimal performance during hydrodermabrasion services." *See* **Ex. 17** at 2.  Bellatrix includes the Luxe Tips (called "Hydro Tips") in its listing for the Belle Lueur Pro system, which is a skin treatment system.  **Ex. 10** at 2. |
| 1[a] a skirt portion configured to removably couple to a handpiece of the skin treatment system; | As shown in the images below, the Luxe Tip comprises a skirt portion configured to removably couple to a handpiece of the skin treatment system. |

| Claim Language | Luxe Tip |
|---|---|
| |  **Ex. 16** at 3.<br><br>**Ex. 8** at 1.  The Genesis unboxing video shows a user coupling the Luxe Tip to the rest of the hydrodermabrasion handpiece. |

| Claim Language | Luxe Tip |
|---|---|
| | <br>**Ex. 15** at 0:38-0:40. |
| 1[b] wherein the tip comprises a proximal end a distal end, the skirt portion being positioned along the proximal end of the tip; | As shown in the image below, the Luxe Tip comprises a proximal end and a distal end, where the skirt portion is positioned along the proximal end of the tip. |

| Claim Language | Luxe Tip |
|---|---|
|  |  |
|  | **Ex. 16** at 3. |
| 1[c]  a  central  body portion  extending  from the  skirt  portion  and terminating  at  a  distal face along the distal end of the tip, a portion of the distal  end  being configured  to  contact  a skin  surface  during  a treatment procedure; | As shown in the images below, the Luxe Tip comprises a central body portion extending from the skirt portion and terminating at a distal face along the distal end of the tip, a portion of the distal end being configured to contact a skin surface during a treatment procedure.<br><br>**Ex. 17** at 2. |

| Claim Language | Luxe Tip |
|---|---|
| | The distal face of the Luxe Tip is configured to contact a skin surface during a treatment procedure, as shown in the image below:<br><br><br><br>**Ex. 16** at 2. |
| 1[d] at least one first passage extending through an interior of the central body portion and configured to receive a fluid from the handpiece and to deliver said fluid to the distal end of the tip; | The Luxe Tip has at least one first passage extending through an interior of the central body portion and configured to receive a fluid from the handpiece and to deliver said fluid to the distal end of the tip.<br><br>As shown in the images below, the Luxe Tip has a passage extending through the interior of the central body portion. |

| Claim Language | Luxe Tip |
| --- | --- |
|  |  |

**Ex. 16** at 1.

This first passage receives a fluid from the handpiece and delivers the fluid to the distal end of the tip. As shown in the image below, the distal end of the Luxe Tip leaves some fluid on the skin surface during a treatment, which is delivered to the skin from the handpiece to the distal end of the tip through the first passage.

**Ex. 16** at 2.

| Claim Language | Luxe Tip |
|---|---|
| 1[e] at least one second passage extending through an interior of the central body portion and configured to convey the fluids and debris from the distal end of the tip to the handpiece; and | The Luxe Tip comprises at least one second passage extending through an interior of the central body portion and configured to convey the fluids and debris from the distal end of the tip to the handpiece.<br><br><br><br>**Ex. 16** at 1.<br><br>The second passages receive fluid and debris from the skin of a patient/the distal end of the Luxe tip to the handpiece.<br><br><br><br>**Ex. 16** at 2. |

| Claim Language | Luxe Tip |
|---|---|
| 1[f] an outer member extending around a periphery of the distal face, said outer member defining an inner area | The Luxe Tip includes an outer member that extends around a periphery of the distal face and defines an inner area.<br><br>As shown above, the Luxe Tip includes a distal face. *See* limitation 1[c], *supra*. As shown below, the distal face has a periphery, with an outer member extending around the periphery. The outer member defines an inner area.<br><br><br><br>**Ex. 16** at 1. |
| 1[g] a protruding member extending in a generally spiral fashion across at least a portion of the inner area of the distal face, the protruding member defining a channel between the at least one first passage and the at least one second passage; | The Luxe Tip includes a protruding member extending in a generally spiral fashion across at least a portion of the inner area of the distal face, the protruding member defining a channel between the at least one first passage and the at least one second passage.<br><br>As shown below, the Luxe Tip has a protruding member extending in a generally spiral fashion across at least a portion of the inner area of the distal face. |

| Claim Language | Luxe Tip |
|---|---|
| |  Inner Area Protruding Member **Ex. 16** at 1. The protruding member defines at least a channel between the at least one first passage and the at least one second passage, as shown below: |

| Claim Language | Luxe Tip |
|---|---|
| |  *Id.* |
| 1[h] wherein the protruding member comprises at least one sharp edge configured to abrade skin tissue. | The protruding member of the Luxe Tip comprises at least one sharp edge configured to abrade skin. The protruding member of the Luxe Tip includes a structure made of hard plastic that has a sharp edge and is configured to abrade when translated on the skin. For example, Bellatrix advertises on Instagram that the Luxe Tip is "designed for precision exfoliation." **Ex. 18** at 3; *see also* **Ex. 17** at 2 ("these Hydro Tips are crafted to support effective exfoliation and maintain optimal performance during hydrodermabrasion services."); **Ex. 10** at 2 (describing "Hydro Exfoliation" modality). This exfoliation (abrasion) occurs, at least in part, via the protruding member's sharp edge. |

81. On information and belief, Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continue to do so, at least one of the Accused Products in a manner that infringes the '089 Patent, including for at least the reasons discussed above.

82. On information and belief, Defendant has also induced and/or are inducing the infringement of the '2089 Patent by marketing, offering for sale, and selling the infringing Luxe Tips, and by continuing to make, use, import, offer for sale, and sell the infringing Luxe Tips. *See e.g.,* **Exs. 10, 16-18**. The Luxe Tips —as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringe the '089 Patent. Defendant evinced the specific intent for its customers, end users, and others to infringe the '089 Patent and actively induced its customers' infringing acts through Defendant's provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*. Further, customers, end users, and others have assembled and/or used the Luxe Tips in a manner that infringes the '089 Patent and continue to do so. *See id.*

83. Defendant also had knowledge of the '089 Patent and that the Luxe Tip infringes the '089 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter. *See* **Ex. 19**. Defendant gained further knowledge of its infringement by way of Plaintiff's second cease and desist letter and this Complaint's filing and/or this Complaint's service upon Defendant.

84. The acts of Defendant alleged herein constitute infringement of the '089 Patent under one or more subsections of 35 U.S.C. § 271.

85. Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Luxe Tips, constituting material parts of the invention of at least Claim 1 of the '089 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

86.     As a direct and proximate result of Defendant's infringement of the '089 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendant the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

87.     Further, Defendant's acts of infringement of the '089 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '089 Patent.   On information and belief, Defendant has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk— at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters.  *See* **Exs. 19** and **20**.  Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

88.     Defendant's acts of infringement of the '089 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

### COUNT VI
### Infringement of U.S. Patent No. 10,357,641

89.     HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

90.     Bellatrix knowingly and intentionally infringed and continues to infringe the '641

Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale,

and/or importation into the United States of the Accused Products and the Luxe Tip used therewith.

91.     For example, as set forth in the claim chart below, the Luxe Tip infringes at least

Claim 1 of the '641 Patent.

| Claim Language | Luxe Tip |
|---|---|
| 1[pre] A tip configured for use in a skin treatment system, comprising: | To the extent that the preamble is limiting, the Luxe Tip is configured for use in a skin treatment system. *See* '089 Patent, limitation 1[pre], *supra*. |
| 1[a] a tip body extending from a proximal end to a distal end of the tip, the proximal end being configured to couple to a handpiece assembly; | As shown in the images below, the Luxe Tip comprises a tip body extending from a proximal end to a distal end of the tip, the proximal end being configured to couple to a handpiece assembly.<br><br><br><br>**Ex. 16** at 3. |

| Claim Language | Luxe Tip |
|---|---|
| |  **Ex. 17** at 2. The Genesis unboxing video shows a user coupling the Luxe Tip to the rest of the hydrodermabrasion handpiece. |

**Ex. 8** at 1.

The Genesis unboxing video shows a user coupling the Luxe Tip to the rest of the hydrodermabrasion handpiece.

| Claim Language | Luxe Tip |
|---|---|
| | <br>**Ex. 15** at 0:38-0:40. |
| 1[b]  at  least  one  first passage          extending through an interior of the tip body and configured to receive a fluid and to deliver said fluid to the distal end of the tip; | The Luxe Tip has at least one first passage extending through an interior of the tip body and configured to receive a fluid and to deliver said fluid to the distal end of the tip.<br><br>As shown in the images below, the Luxe Tip has a passage extending through the interior of the tip body. |

| Claim Language | Luxe Tip |
| --- | --- |
| | 

**Ex. 16** at 1.

This first passage receives a fluid and delivers the fluid to the distal end of the tip. As shown in the image below, the distal end of the Luxe Tip leaves fluid on the skin surface during a treatment, which is delivered to the skin from the handpiece to the distal end of the tip through the first passage.

**Ex. 16** at 2 |

| Claim Language | Luxe Tip |
|---|---|
| 1[c] at least one second passage extending through an interior of the tip body and configured to convey fluid and debris away from the distal end of the tip; | The Luxe Tip comprises at least one second passage extending through an interior of tip body and configured to convey the fluids and debris from the distal end of the tip to the handpiece.<br><br><br><br>**Ex. 16** at 1.<br><br>The second passages convey fluid and debris away from the skin of a patient/the distal end of the Luxe tip.<br><br><br><br>**Ex. 16** at 2. |

| Claim Language | Luxe Tip |
|---|---|
| 1[d] an outer member defining a periphery along the distal end, the outer member being configured to contact skin during a treatment procedure; and | The Luxe Tip includes an outer member defining a periphery along the distal end, the outer member being configured to contact skin during a treatment procedure.<br><br>As shown above, the Luxe Tip includes a distal end. *See* limitation 1[a], *supra*. As shown below, the distal end has a periphery, with an outer member defining the periphery.<br><br><br><br>**Ex. 16** at 1. This outer member is configured to contact skin during a treatment procedure.<br><br><br><br>**Ex. 16** at 2. |

| Claim Language | Luxe Tip |
|---|---|
| 1[e] at least one inner member located within an inner area of the outer member, wherein the at least one inner member comprises a spiral-like pattern; | The Luxe Tip includes at least one inner member located within an inner area of the outer member, wherein the at least one inner member comprises a spiral-like pattern.<br><br>As shown below, the Luxe Tip has an inner member located within an inner area extending in a generally spiral fashion across the distal face.<br><br><br><br>**Ex. 16** at 1. |
| 1[f] wherein the at least one inner member is configured to abrade skin. | The inner member of the Luxe Tip is configured to abrade skin.<br><br>The inner member of the Luxe Tip includes a structure made of hard plastic that is configured to abrade when translated on the skin. For example, Bellatrix advertises on Instagram that the Luxe Tip is "designed for precision exfoliation." **Ex. 18** at 3; *see also* **Ex. 17** at 2 ("these Hydro Tips are crafted to support effective exfoliation and maintain optimal performance during hydrodermabrasion services."); **Ex. 10** at 2 (describing "Hydro Exfoliation" modality).. |

92.     On information and belief, Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continue to do so, at least one of the Accused Products in a manner that infringes the '641 Patent, including for at least the reasons discussed above.

93.     On information and belief, Defendant has also induced and/or are inducing the infringement of the '641 Patent by marketing, offering for sale, and selling the infringing Luxe Tips, and by continuing to make, use, import, offer for sale, and sell the infringing Luxe Tips. *See e.g.,* **Exs. 16-18**. The Luxe Tips—as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringe the '641 Patent. Defendant evinced the specific intent for its customers, end users, and others to infringe the '641 Patent and actively induced its customers' infringing acts through Defendant's provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*. Further, customers, end users, and others have assembled and/or used the Luxe Tips in a manner that infringes the '641 Patent and continue to do so. *See id.*

94.     Defendant also had knowledge of the '641 Patent and that the Luxe Tip infringes the '641 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter. *See* **Ex. 19** and **20**. Defendant gained further knowledge of its infringement by way of Plaintiff's second cease and desist letter and this Complaint's filing and/or this Complaint's service upon Defendant.

95.     The acts of Defendant alleged herein constitute infringement of the '641 Patent under one or more subsections of 35 U.S.C. § 271.

96.     Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United

States, the Accused Products, constituting material parts of the invention of at least Claim 1 of the '641 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

97.     As a direct and proximate result of Defendant's infringement of the '641 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendant the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

98.     Further, Defendant's acts of infringement of the '641 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '641 Patent.  On information and belief, Defendant has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk— at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters. *See* **Exs. 19** and **20**.  Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

99.     Defendant's acts of infringement of the '641 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

## COUNT VII
### Infringement of U.S. Patent No. 10,357,642

100.    HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

Bellatrix knowingly and intentionally infringed and continues to infringe the '642 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Luxe Tip.

101.    For example, as set forth in the claim chart below, the Luxe Tip infringes at least Claim 1 of the '642 Patent.

| Claim Language | Luxe Tip |
|---|---|
| 1[pre] A tip configured for use in a skin treatment system, comprising: | To the extent that the preamble is limiting, the Luxe Tip is configured for use in a skin treatment system.<br><br>Bellatrix has marketed the Luxe Tips as a "crafted to support effective exfoliation and maintain optimal performance during hydrodermabrasion services." *See* **Ex. 17** at 2.  Bellatrix includes the Luxe Tips (called "Hydro Tips") in its listing for the Belle Lueur Pro system, which is a skin treatment system.  **Ex. 10** at 2. |
| 1[a] a tip body; | As shown in the images below, the Luxe Tip comprises a tip body. |

| Claim Language | Luxe Tip |
| --- | --- |
| |  Ex. 16 at 3. Ex. 17 at 2. |

| Claim Language | Luxe Tip |
|---|---|
| 1[b] at least one vacuum hole configured to receive fluid and debris being transferred away from a distal end of the tip body; | The Luxe Tip comprises at least one vacuum hole configured to receive fluid and debris being transferred away from a distal end of the tip body.<br><br><br><br>**Ex. 16** at 1.<br><br>The vacuum holes convey fluid and debris away from the skin of a patient/the distal end of the Luxe tip.<br><br><br><br>**Ex. 16** at 2. |

| Claim Language | Luxe Tip |
|---|---|
| 1[c] an outer member defining a periphery along the distal end; | The Luxe Tip includes an outer member defining a periphery along the distal end.<br><br>As shown above, the Luxe Tip includes a distal end. *See* limitation 1[b], *supra*. As shown below, the distal end has a periphery, with an outer member defining the periphery.<br><br><br><br>**Ex. 16** at 1. |
| 1[d] at least one inner member located within an interior area of the outer member, the at least one inner member being configured to abrade skin; | The Luxe Tip includes at least one inner member located within an interior area of the outer member, the at least one inner member being configured to abrade skin.<br><br>As shown below, the Luxe Tip has at least one inner located within the inner area of the outer member. |

| Claim Language | Luxe Tip |
|---|---|
| | <br><br>**Ex. 16** at 1.<br><br>The inner member of the Luxe Tip includes a structure made of hard plastic that is configured to abrade when translated on the skin. For example, Bellatrix advertises on Instagram that the Luxe Tip is "designed for precision exfoliation." **Ex. 18** at 3; *see also* **Ex. 17** at 2 ("these Hydro Tips are crafted to support effective exfoliation and maintain optimal performance during hydrodermabrasion services."); **Ex. 10** at 2 (describing "Hydro Exfoliation" modality). |
| 1[e]   wherein   the   tip body, the outer member and the at least one inner member        are monolithically formed; | The Luxe Tip body, the outer member, and the at least one inner member are monolithically formed.<br><br>As shown in the image below, the Luxe Tip body, outer member, and inner member are monolithically formed of a single piece of manufactured plastic. |



| Claim Language | Luxe Tip |
|---|---|
|  | Ex. 17 at 2. |
| 1[f] wherein a proximal end of the tip is configured to couple to a handpiece assembly; | The proximal end of the Luxe Tip is configured to couple to a handpiece assembly.<br><br>As shown in the images below, the Luxe Tip has a proximal end.<br><br>Proximal End<br><br>Ex. 17 at 2.<br><br>Proximal End<br><br>Handpiece Assembly<br><br>Ex. 8 at 1. |

| Claim Language | Luxe Tip |
|---|---|
| | The Genesis unboxing video shows a user coupling the Luxe Tip to the hydrodermabrasion handpiece.<br><br><br><br>**Ex. 15** at 0:38-0:40. |
| 1[g] and wherein the at least one inner member comprises a spiral-like pattern. | The at least one inner member of the Luxe Tip comprises a spiral-like pattern, as shown in the image below. |

| Claim Language | Luxe Tip |
|---|---|
| | <br>Inner Member<br><br>**Ex. 16** at 1. |

102.    On information and belief, Defendant makes, uses, imports, offers for sale, and/or sells in the United States, and continue to do so, at least one of the Accused Products in a manner that infringes the '642 Patent, including for at least the reasons discussed above.

103.    On information and belief, Defendant has also induced and/or are inducing the infringement of the '642 Patent by marketing, offering for sale, and selling the infringing Luxe Tips, and by continuing to make, use, import, offer for sale, and sell the infringing Luxe Tips.  *See e.g.,* **Exs. 15-18**.  The Accused Products—as provided by Defendant to its customers, end users, and others; used as intended; and instructed by Defendant—infringe the '642 Patent.  Defendant evinced the specific intent for its customers, end users, and others to infringe the '642 Patent and actively induced its customers' infringing acts through Defendant's provision of marketing,

product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*. Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '642 Patent and continue to do so. *See id.*

104.     Defendant also had knowledge of the '642 Patent and that the Luxe Tip infringes the '642 Patent at least as of March 21, 2025, when Bellatrix received HydraFacial's first cease and desist letter. *See* **Ex. 19**. Defendant gained further knowledge of its infringement by way of Plaintiff's second cease and desist letter and this Complaint's filing and/or this Complaint's service upon Defendant.

105.     The acts of Defendant alleged herein constitute infringement of the '642 Patent under one or more subsections of 35 U.S.C. § 271.

106.     Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendant has offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products, constituting material parts of the invention of at least Claim 1 of the '642 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

107.     As a direct and proximate result of Defendant's infringement of the '642 Patent, Defendant has derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages. Therefore, HydraFacial is entitled to recover from Defendant the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

108.     Further, Defendant's acts of infringement of the '642 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '642

Patent.   On information and belief, Defendant has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendant knew or should have known of that objectively high risk—at the very latest, upon receiving notice from HydraFacial's March 21, 2025 and May 30, 2025 cease and desist letters.  *See* **Exs. 19 and 20**.  Thus, Defendant's acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

109.   Defendant's acts of infringement of the '642 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendant will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HydraFacial LLC prays for judgment and seeks relief as follows:

1.   A judgment in favor of HydraFacial and against Defendant on all claims alleged herein;

2.   A judgment that Defendant has infringed and continue to infringe the Asserted Patents under 35 U.S.C. § 271;

3.   A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from (1) making, using, selling, offering to sell, and/or importing into the United States the Genesis system, the Belle Lueur Pro system, the Luxe Tips, and inducing others to use them in an infringing manner; and (2) infringing the Asserted Patents in violation of 35 U.S.C. § 271;

4.      An accounting of all Defendant's gains, profits, and advantages derived from its infringement of the Asserted Patents in violation of 35 U.S.C. § 271;

5.      An order that Defendant, jointly and severally, pay to HydraFacial actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, in accordance with 35 U.S.C. § 284;

6.      An order trebling or otherwise increasing damages pursuant to 35 U.S.C. § 284 because of Defendant's willful infringement;

7.      An order finding this case exceptional under 35 U.S.C. § 285, and requiring Defendant to pay HydraFacial its reasonable attorney fees incurred in this action;

8.      Pre-judgment and post-judgment interest and costs as fixed by the Court; and

9.      Award to HydraFacial such other and further legal or equitable relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff HydraFacial LLC hereby demands a trial by jury for all issues so triable.

Dated: June 24, 2025                    Respectfully Submitted,

<u>/s/ Clay M. Carlton</u>
Clay M. Carlton
Florida Bar No. 85767
clay.carlton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: (305) 415-3000
Facsimile: (305) 415-3001

Ali S. Razai (*pro hac vice* forthcoming)
ali.razai@morganlewis.com
Benjamin J. Everton (*pro hac vice* forthcoming)
ben.everton@morganlewis.com
Christian D. Boettcher (*pro hac vice* forthcoming)
christian.boettcher@morganlewis.com
Zachary Messick (*pro hac vice* forthcoming)
zachary.messick@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Telephone: (714) 830-0600
Facsimile: (714) 830-0700

Liya K. Levin (*pro hac vice* forthcoming)
liya.levin@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

***Attorneys for Plaintiff HydraFacial LLC***